UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CARRA OTTO, AS THE SURVIVING SPOUSE OF RICHARD OTTO, AND CARRA OTTO AS THE ADMINISTRATRIX OF THE ESTATE OF RICHARD OTTO,

Plaintiffs,

v.

REFACCIONES NEUMATICAS LA PAZ, S.A., DE C.V.,

Defendant.

AND ALL RELATED CASES

Case No. 3:16-cv-00451-MMD-WGC

ORDER

**I.  SUMMARY**

This is a products liability case. Plaintiff Carra Otto's husband was found dead near where he was working at the Klondex Midas Mine in Nevada with his coveralls wrapped around the shaft of the jackleg drill he had been working with. (ECF No. 81 at 3-4.) Remaining[1] Defendant[2] Refacciones Neumaticas La Paz, S.A. DE C.V. manufactured some of the components that went into the jackleg drill. (ECF No. 165 at 9-10.) Plaintiff sues Defendant both in her capacity as her husband's surviving spouse and the administratrix of his estate for strict liability—an alleged design defect leading to his wrongful death. (ECF No. 81.) Before the Court are Defendant's motion to exclude the testimony of Plaintiff's expert witness Quent Augspurger as unreliable (ECF No. 166), and

---

[1]Plaintiff also sued F & H Mine Supply ("F&H") and Mid-Western, LLC. (ECF No. 81.) However, she stipulated to dismiss both of them. (ECF Nos. 164, 180 (orders granting stipulations of dismissal).)

[2]For ease of reference, the Court will refer to Refacciones Neumaticas La Paz, S.A. DE C.V. as "Defendant."

1 Defendant's motion for summary judgment as to each of Plaintiff's claims (ECF No. 165).³
2 As further explained below, the Court will grant the motion to exclude, but deny the motion
3 for summary judgment—because Augspurger's opinions regarding a proposed safer,
4 alternative jackleg drill design are unreliable, but the Court is unpersuaded by Defendant's
5 arguments in its motion for summary judgment.

**II.     BACKGROUND**

The following facts are undisputed unless otherwise noted. A jackleg drill is a portable rock drill designed for one person operation. (ECF No. 165-14 at 3.) "Its single leg rests on the ground, with a 'claw foot' that digs into the floor made of 'muck,' the broken rock that has been leveled out with a loader." (*Id.*) It looks like this:



(ECF No. 176-1 at 9.) As one can see in the image, jackleg drills have a long drill steel that has a drill bit attached to the end of it. (ECF No. 165-14 at 3.) The drill is powered by compressed air, which flows into the machine, through the steel, and to the bit—to prevent the bit from clogging with rock and dirt. (*Id.*)

---

³The Court reviewed the parties' responses and replies to these motions. (ECF Nos. 174, 176, 177, 178.)

The component parts of a jackleg drill are interchangeable with the parts manufactured by any other manufacturer of jackleg drills because all jackleg drills use the same design. (ECF No. 165-18.) Similarly, the parties agree that all jackleg drills operate the same way. (ECF No. 174 at 11.) As pertinent here, the drill steel and drill bit of all jackleg drills are only able to spin in one direction. (ECF No. 166-3 at 14-15.)

Nobody knows exactly what led to Plaintiff's husband's tragic death, in terms of whether he, for example, slipped, but the parties agree his cause of death was suffocation because his clothes were caught in the rotating drill steel of the jackleg drill he was using. (ECF No. 166 at 2, 166-3 at 41, 174 at 2.)

The Court will first address Defendant's motion to exclude because Plaintiff relies on the testimony of the expert Defendant challenges in that motion in opposing Defendant's motion for summary judgment, and then addresses Defendant's motion for summary judgment. Plaintiff has abandoned her negligence claim (ECF No. 174 at 4, 15), so this order only addresses her strict liability claim (ECF No. 81 at 4-5)—which the Court understands to be her sole remaining claim.[4]

### III. MOTION TO EXCLUDE (ECF NO. 166)

#### A. Legal Standard

Fed. R. Evid. 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

---

[4] According to Plaintiff, "[t]his is a wrongful death case in which liability is predicated on strict products liability. Although Plaintiffs' amended complaint contains allegations of negligence, Plaintiffs intend to abandon their negligence claim and proceed to trial only on a theory of strict products liability." (ECF No. 174 at 4.) The Court therefore deems Plaintiff's negligence claim abandoned. As such, this order only addressees Plaintiff's strict liability theory.

The Supreme Court provided additional guidance on Rule 702 and its application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* focused on scientific testimony and *Kumho* clarified that *Daubert*'s principles also apply to technical and specialized knowledge. *See Kumho*, 526 U.S. at 141, 147-49. "To determine if the principles and methods utilized [by the proposed expert] are reliable, five factors have traditionally been used: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Romero-Lobato*, 379 F. Supp. 3d 1111, 1115 (D. Nev. 2019) (citing *Daubert*, 509 U.S. at 592-94). That said, the trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Kumho*, 526 U.S. at 152. The "test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141.

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and quotation marks omitted). Shaky but admissible evidence should be attacked by cross examination, contrary evidence, and attention to the burden of proof, rather than excluded. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010).

///

## B. Augspurger's Opinion

Augspurger is a certified mechanical engineer who has been in private practice as a consulting mechanical engineer since 1975 and has appeared as an expert witness in other cases involving mechanical systems. (ECF No. 176-1 at 39.) His CV also lists him as a member and past chairman of the American Institute of Mining Engineers. (*Id.*) Augspurger opines that Plaintiff's husband's "death occurred because his clothing came in contact with and wrapped around the rotating Drill Steel [of the jackleg drill]." (*Id.* at 4.) Augspurger also opines that the jackleg drill he believes killed Plaintiff's husband was defectively designed because the drill bit and shaft could only turn in one direction, and proposes a safer alternative design—where the drill can rotate in both directions. (*Id.* at 6.) If the drill bit and steel could have rotated in both directions, Plaintiff's husband may have been able to free his clothes from the drill. As relevant to Defendant's motion to exclude, his opinion testimony is laid out in a report dated November 1, 2018 ("Report") (ECF No. 176-1), and in his deposition (ECF No. 166-3).

## C. Discussion

Defendant asks the Court to exclude Augspurger's Report and testimony about a safer alternative design for jackleg drills for both procedural and substantive reasons. (ECF No. 166 at 2-4 (arguing that the report should be excluded because Plaintiff failed to comply with Fed. R. Civ. P. 26), 4-11 (arguing the report and related opinions about a safer alternative design should be excluded under *Daubert* and *Kumho*).)

To start, the Court rejects Defendant's procedural challenge to Augspurger's Report regarding the timeliness of its disclosure (ECF No. 166 at 2-4) because Defendant already made the same argument to Judge Cobb, and Judge Cobb rejected it. (ECF Nos. 104 (making the same argument), 124 at 2-5 (rejecting it in pertinent part).) Moreover, the Court agrees with Plaintiff that Augspurger's Report is not appropriately characterized as a rebuttal report. (ECF No. 176 at 3-5.) Augspurger's Report does not appear written to rebut the opinions of another expert. (ECF No. 176-1 at 2-7.) And Augspurger explained

that the Report was not a rebuttal report. (ECF No. 166-3 at 41-42.) Thus, the Court rejects Defendant's procedural challenges to Augspurger's Report.

Substantively, Defendant argues that Augspurger's testimony, including as written in his Report, does not meet the Fed. R. Evid. 702 standard for admissibility as further defined in *Daubert* and *Kumho*. (ECF No. 166 at 4-11.) Plaintiff counters that the Court should not exclude Augspurger's Report because he took a methodical approach, the Court should view the rejection of expert testimony as the exception, not the rule, and that Defendant's attacks on the feasibility of Augspurger's proposed alternative design are besides the point because Plaintiff is not required to propose an alternative design under the governing law.[5] (ECF No. 176 at 5-6.) The Court agrees with Defendant.

Augspurger's testimony regarding a safer alternative design, including as laid out in his Report (ECF No. 176-1), does not satisfy the *Daubert* criteria for determining whether expert testimony is sufficiently reliable. While it may be methodical, the approach Augspurger took is speculative and untested. The gist of Augspurger's testimony is that the jackleg drill at issue in this case is unreasonably dangerous because the drill bit only spins in one direction, and, relatedly, that Plaintiff's late husband would not have been harmed if the drill he was using was capable of spinning in reverse. (ECF Nos. 166-3, 176-1.) He thus points to an alternative design where the drill bit and steel could spin in both directions. (ECF No. 176-1 at 6 ("We were able to design a variation to the mechanism that would eliminate the hazard of the Drill Steel rotating in one direction, thereby eliminating the danger of entanglement.").) To show his alternative design is feasible, Augspurger built a single model drill whose bit can rotate in both directions when prodded with a steel rod, though he never tried to test it with compressed air or use it to drill into

---

[5]Defendant persuasively argues that it is, in fact, Plaintiff's argument that is beside the point because Plaintiff herself alleges the existence of a safer alternative design and has proffered Augspurger to opine on that safer design. (ECF No. 178 at 3-5; *see also* ECF No. 81 at 4-5 (alleging the existence of a safer alternative design to show the drill was defectively designed).) The Court agrees with Defendant on this point.

any rock. (ECF No. 166-3 at 25-26.) Considering each of the five *Daubert* factors, this methodology is insufficiently reliable.

The first factor is whether the technique can be tested. *See Romero-Lobato*, 379 F. Supp. 3d at 1115. Augspurger conceded in his deposition that he could have tested his reversable-direction drill, but did not—instead, he built a tabletop model. (ECF No. 166-3 at 22-27, 36.) Thus, while Augspurger's alternative design could be tested, the Court cannot say this factor weighs in favor of finding his testimony reliable. The second factor is whether the technique has been subjected to peer review and publication. *See Romero-Lobato*, 379 F. Supp. 3d at 1115. Augspurger's alternative design has not been—he built a single model after testing out two jackleg drills for the first time. (ECF No. 166-3 at 22-27.) Thus, his model has not been peer reviewed or a description of it published, and this factor weighs in favor of exclusion. *See Morin v. United States*, 534 F. Supp. 2d 1179, 1188 (D. Nev. 2005), *aff'd*, 244 F. App'x 142 (9th Cir. 2007) (excluding expert testimony where there was "no evidence of peer review or publication"). Third, the Court will consider the known error rate of the theory or technique. *See Romero-Lobato*, 379 F. Supp. 3d at 1115. But the Court cannot know the error rate of Augspurger's alternative design because he apparently built the only model in existence reflecting this design, and it has never been used to drill into any rock. (ECF No. 166-3 at 22-27.) *See also Morin*, 534 F. Supp. 2d at 1188 (noting the error rate was also unknown).

The Court will fourth consider whether there are standards controlling the technique's operation. *See Romero-Lobato*, 379 F. Supp. 3d at 1115. Augspurger pointed to some standards in his Report to the effect that machines with dangerous moving parts should be designed to keep the dangerous parts away from the worker, guard the part to keep a worker from touching it, and to warn the operator of the hazard of the moving part. (ECF No. 176-1 at 5.) That all makes sense, but the Report does not address the standards that would apply to Augspurger's proposed alternative design. Augspurger did not indicate whether his alternative design would incorporate a guard or warning, instead focusing merely on the fact that the drill bit could operate in both directions. (ECF No. 166-

3.) Thus, this factor appears largely inapplicable, and therefore does not weigh strongly in either direction.

But the fifth factor—whether the technique enjoys general acceptance within the relevant community (*see Romero-Lobato*, 379 F. Supp. 3d at 1115)—weighs strongly in favor of excluding Augspurger's alternative design. Even Augspurger conceded that he was unaware of any dual-rotation jackleg drills that had ever been used in the mining industry. (ECF No. 166-3 at 27-29.) That means the dual-rotation jackleg drill Augspurger proposes as an alternative design would be unprecedented. Augspurger's proposed alternative design therefore does not enjoy general acceptance within the relevant mining community.

In sum, three *Daubert* factors weigh in favor of excluding Augspurger's testimony of a feasible alternative design—a dual-rotation jackleg drill—and the two remaining factors are neutral at best. The Court will therefore exclude Augspurger's Report (ECF No. 176-1 and any other copies of the report filed elsewhere on the docket) and preclude him from testifying at trial about his proposed alternative design. *See Culbertson v. Freightliner Corp.*, 50 F. Supp. 2d 998, 1000 (D. Nev. 1999) (precluding mechanical engineering expert from testifying at trial after the court determined his testimony was unreliable in a products liability case about an allegedly defective driver's seat inside a tractor-trailer, and granting summary judgment of no liability to the defendants).

The Court will also grant Defendant's motion to exclude. (ECF No. 166.) And as it is unreliable, the Court will not rely on Augspurger's Report or his proposed alternative design in considering Defendant's motion for summary judgment. *See Culbertson*, 50 F. Supp. 2d at 1000 (doing the same).

## IV. MOTION FOR SUMMARY JUDGMENT (ECF NO. 165)

### A. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings,

the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

**B. Discussion**

Under Nevada law, a plaintiff must establish three elements to show strict liability: "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992). Nevada further uses the consumer expectation test to determine whether a product's design is defective under strict liability. *See Ford Motor Co. v. Trejo*, 402 P.3d 649, 652 (Nev. 2017). "Under the consumer expectation test, a plaintiff must demonstrate that a product 'failed to perform in the manner reasonably to be expected in light of its nature and intended function and was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.'" *Id.* (citation omitted). Alternative designs are one factor the jury may consider in evaluating whether an allegedly defectively-designed product is unreasonably dangerous—but those proposed alternative designs must be commercial feasible. *See id.* at 653-54. "In addition to evidence of alternative designs, evidence of other accidents involving analogous products, post-manufacture design changes, and post-manufacture industry standards will support a strict product liability claim." *Id.* at 654.

As further explained below, the Court finds that Defendant has not met its burden to show it is entitled to summary judgment because material disputed issues of fact remain as to the elements of Plaintiff's strict liability case. The Court addresses each of Defendant's primary arguments, in turn, below.

Defendant first argues it is entitled to summary judgment because the jackleg drill that killed Plaintiff's husband was substantially modified between the time it was sold and the time of the accident. (ECF No. 165 at 13-18.) To start, the Court agrees with Defendant there is no dispute that the jackleg drill at issue was modified. (ECF Nos. 165 at 14, 165-15 at 6 (conceding that the drill was remanufactured at least once).) However, Plaintiff disputes whether that modification was substantial or foreseeable. (ECF No. 174 at 11-13.) As to foreseeability, even Defendant presents as undisputed the fact that the

component parts of jackleg drills are interchangeable. (ECF No. 165 at 8-9.) Thus, as Plaintiff argues (ECF No. 174 at 12-13), it is foreseeable that some parts of Defendant's jackleg drill would be replaced with parts made by a different manufacturer. Similarly, if all parts are interchangeable, replacing certain parts of the drill may not constitute a substantial alteration. Thus, the Court finds Plaintiff's arguments more persuasive.

Both parties also rely on *Robinson v. G.G.C., Inc.*, 808 P.2d 522, 525 (Nev. 1991). (ECF Nos. 165 at 15, 174 at 11-13.) *Robinson* favors Plaintiff's argument here. First, "if the alteration was insubstantial, foreseeable, or did not actually cause the injury, then the manufacturer of a defective product remains liable." *Robinson*, 808 P.2d at 525. (citation omitted). As explained above, a factual dispute remains as to whether the alterations that were indisputably made to the jackleg drill at issue here were insubstantial or foreseeable. Moreover, "it is a question of fact for the jury to decide whether the machine was substantially altered, such that the manufacturer can no longer be held liable for injuries resulting from those alterations." *Resoso v. Clausing Indus., Inc.*, Case No. 2:14-cv-00102-RFB-GWF, 2018 WL 3822462, at *4 (D. Nev. Aug. 10, 2018) (citing *Robinson*, 808 P.2d at 525) (finding factual dispute precluded summary judgment in a design defect products liability case). *Robinson* and *Resoso* therefore support the view that it would be inappropriate for the Court to grant summary judgment to Defendant where material factual disputes remain about the alteration of the jackleg drill.

Defendant next argues it is entitled to summary judgment because Plaintiff cannot establish that the jackleg drill was defectively designed. (ECF No. 165 at 18-19.) However, the Court finds Plaintiff proffers just enough evidence to survive summary judgment, particularly when the evidence is viewed in the light most favorable to Plaintiff as the non-moving party. Defendant more specifically argues it is entitled to summary judgment because Plaintiff has no evidence to support its contention that the uni-directional rotation of the drill bit and drill shaft is unreasonably dangerous under the governing consumer expectations test. (ECF No. 165 at 18-19.) In opposing Defendant's argument, Plaintiff only points to two types of evidence. (ECF No. 174 at 13-14.) Plaintiff first points to

Augspurger's opinion that a safer alternative design exists. (*Id.* at 13-14.) But the Court has excluded Plaintiff's expert's unreliable alternative design opinion. (*See supra* Section III.C.) Plaintiff next points to "the evidence of many, many other accidents related to use of jackleg drills" as enough evidence to "support a jury's finding that the subject drill has a design defect."[6] (ECF No. 174 at 14.) This is appropriate evidence for the Court to consider in applying the consumer expectations test. *See Trejo*, 402 P.3d at 654 ("evidence of other accidents involving analogous products . . . will support a strict product liability claim."). The Court therefore finds that a material factual dispute remains as to whether Defendant's jackleg drill was unreasonably dangerous in light of the evidence of other accidents involving analogous jackleg drills Plaintiff intends to offer at trial.

Defendant then argues it is insulated from liability under the component part supplier doctrine. (ECF No. 165 at 19-23.) However, Defendant concedes in its brief that Nevada has not adopted this doctrine. (*Id.* at 20.) Defendant further explains that Nevada has also not adopted the source of this doctrine—the Restatement (Third) of Torts: Products Liability. (*Id.*) Moreover, the only Nevada case Defendant discusses in this portion of its argument is a footnote in a decision from this district where, contrary to Defendant's suggestion, Judge Reed explained why he was adopting the bulk supplier

---

[6]The three exhibits (3, 4, and 5) that Plaintiff is referring to in this sentence are not properly authenticated. (ECF No. 174 at 14; *see also* ECF Nos. 174-3, 174-4, 174-5.) "[D]ocuments authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr*, 285 F.3d at 773-74 (internal quotation marks and citation omitted). A foundation for authenticity may also be established by any manner permitted under Fed. R. Evid. 901(b) and 902. *See id.* at 774. Exhibits 2, 3, and 4 to Plaintiff's response to Defendant's summary judgment motion—which purport to be reports about accidents involving jackleg drills—lack the required affidavit, are not accompanied by any evidence that would allow the Court to verify their authenticity under Fed. R. Evid. 901(b), and do not appear to fall within any of the categories of self-authenticating evidence listed in Fed. R. Evid. 902. However, Defendant does not challenge this evidence on authentication grounds. (ECF No. 177.) Moreover, it appears to the Court these documents were produced in discovery and used as exhibits in a deposition, because they include bates numbers and images of stickers marking them as exhibits. Further, Plaintiff could fix these authentication issues prior to trial. For these reasons, the Court will consider Plaintiff's evidence of accidents involving jackleg drills despite their authentication issues.

doctrine—and not the component part supplier doctrine. (*Id.* (discussing *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1467 n.8 (D. Nev. 1992).) Defendant's argument for summary judgment based on the component part supplier doctrine thus lacks legal support. The Court declines to adopt the component part supplier doctrine, and declines to grant summary judgment to Defendant on this basis.

Plaintiff also emphasizes in her opposition to Defendant's motion for summary judgment that comparative negligence is not a defense to a strict products liability claim under Nevada law. The Court agrees with Plaintiff on this point. *See Resoso*, 2018 WL 3822462, at *4 ("comparative negligence is not a defense to strict liability in Nevada") (first citing NRS 41.141(5)(a), then citing *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 27 (Nev. 1998)). Any role Plaintiff's husband may have played in the accident leading to his death therefore does not weigh in favor of granting Defendant's summary judgment motion.

In sum, the Court finds Defendant has not shown it is entitled to summary judgment on Plaintiff's strict liability claim. The Court will therefore deny Defendant's motion for summary judgment.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to exclude Quent Augspurger's opinions and testimony (ECF No. 166) is granted as specified herein.

It is further ordered that Defendant's motion for summary judgment (ECF No. 165) is denied.

DATED THIS 25th day of February 2020.

———————————————
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

13